**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SCOTT A. FRYE, AIS # 00278148,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 14-00192-CG-N** |
| | ) | |
| **JEFFERSON S. DUNN,**[1] | ) | |
| **Commissioner, Alabama Department** | ) | |
| **of Corrections,** | ) | |
|     **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Scott A. Frye ("Frye"), an Alabama prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1).  The Respondent, through the Office of the Attorney General of the State of Alabama, has timely filed an Answer (Doc. 5) to the petition, and Frye has filed a reply (Doc. 6) to the Answer.

This habeas petition is now ripe for adjudication and, under SD ALA Local Rule 72.2(c)(4), has been referred to the undersigned Magistrate Judge for entry of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon consideration, and for the reasons stated

---

[1] Frye has notified the Court that he has been transferred to the Alabama Therapeutic Educational Facility, a private penal facility with no listed warden (*see* http://www.doc.state.al.us/FacAddr.aspx (last visited April 3, 2015)).  (Doc. 8).  Because Frye remains a prisoner under the control of the Alabama Department of Corrections (*see* http://www.doc.state.al.us/InmateSearch.aspx (last visited April 3, 2015)), Jefferson S. Dunn, the current Commissioner of ADOC, is substituted for Warden Mary Cooks as the Respondent in this action.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").

herein, it is **RECOMMENDED** that Frye's habeas petition (Doc. 1) be **DENIED** and that this action be **DISMISSED with prejudice**.[2]   It is further **RECOMMENDED** that Frye be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.     Applicable Background

The Alabama Court of Criminal Appeals set forth the following facts relevant to the claims in Frye's present habeas petition:

---

[2]     28 U.S.C. § 2241(d) provides: "Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application."). Eleventh Circuit precedent appears to treat § 2241(d) as jurisdictional.  *See Breazeale v. Bradley*, 582 F.2d 5, 6 (5th Cir. 1978) ("Federal habeas corpus may be brought **only** in a federal district court which has jurisdiction either over the prisoner or over his custodian. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S. Ct. 1123, 1130, 35 L. Ed. 2d 443 (1973); *Blau v. United States*, 566 F.2d 526, 527 (5th Cir. 1978). If Breazeale is eligible for any relief, then, he must seek it in Alabama." (emphasis added)); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit handed down prior to October 1, 1981).  *But see U. S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1128 (2d Cir. 1974) ("We think it clear, from both the Court's language[ in *Braden*] and the language of § 2241(d), that it makes more sense to read this section as a provision fixing venue and aimed at problems of judicial administration whose solution lies in the balance of convenience among various courts."); *Bozeman v. Lambert*, 587 F. Supp. 1021, 1023 (M.D. Ala. 1984) ("Section 2241(d) is a venue statute, however, and not a jurisdictional restriction." (citing *Preiser*)).

Frye's petition challenges a conviction and sentence handed down by the Circuit Court of Coffee County, Alabama, which is part of the Middle District of Alabama.  *See* 28 U.S.C. § 81(b).  However, because Frye filed his habeas petition while he was incarcerated at Atmore Community Work Center in Escambia County, Alabama, which is part of this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain the petition. Frye's subsequent transfer to the Alabama Therapeutic Educational Facility in Columbiana, Shelby County, Alabama (*see* http://www.doc.state.al.us/FacAddr.aspx (last visited April 3, 2015)), a part of the Northern District of Alabama, *see* 28 U.S.C. § 81(a), does not divest this Court of such jurisdiction. *See McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978) ("Jurisdiction attached upon the initial filing for habeas corpus relief. It was not destroyed upon the transfer of petitioner and accompanying custodial change. While his transfer to the Northern District may have given both courts concurrent jurisdiction, it did not destroy the power of the Southern District court to rule in his case." (citations omitted)).

A Coffee County grand jury indicted Frye on December 2, 2005, for five counts of the sale of unregistered securities in violation of § 8-6-4, Ala. Code 1975.   Frye was not taken into custody in Coffee County, however, until March 2010, immediately following his extradition from the Philippines where he had been living, according to a motion Frye filed in the circuit court, since September 2005.  Counsel was initially appointed for Frye, but in December 2010, at Frye's request, that counsel was permitted to withdraw and Frye proceeded to represent himself…

On December 27, 2010, Frye moved for a speedy trial.  In that motion, Frye specifically asked the court "to set a trial date in January 2011 … or, if the State is allowed to delay the trial date for any reason, up until that date, … to allow [Frye] to be released on his own recognizance or signature bond."  The State responded to Frye's motion and asserted, among other things, that any delay in the prosecution was because Frye had fled to the Philippines once he had learned that he would be indicted in 2005.  The trial court set a hearing date of January 27, 2011, to consider all pending motions in the case.

On January 24, 2011, Frye filed a "motion to dismiss all indictments with prejudice for lack of speedy prosecution and/or speedy trial."  In that motion, Frye stated that he had traveled to the Philippines in September 2005 "and then ended up staying in Angeles, City, Philippines, to get engaged with a Philippine girl and endeavoring to set up businesses and meet potential clients and funding sources."  Frye asserted that when he moved to the Philippines he changed his address for his bank account in the United States; he further asserted that he never tried to "hide" in the Philippines or otherwise attempt to evade prosecution before he was arrested in October 2009 in the Philippines.  Frye claimed that as early as January 2006 the State knew the Frye was in the Philippines.[4]  Frye asserted that he first learned of the December 2005 indictments against him after September 2009 when, he said, he applied for a replacement United States passport at an embassy in the Philippines.  According to Frye, in October or November 2009, Special Agent Shawn Gavin of the Federal Bureau of Investigation notified him of the indictments and the outstanding arrest warrants.  In November 2009, the State of Alabama began the extradition process, and Frye arrived in Alabama in March 2010.  Frye's motion asserted that during his extradition, he was forced to leave "his computer and documents and such evidence" and, he said, that evidence had "disappeared."

   FN4 – Frye based this allegation on a February 3, 2006, video of

3

the State provided to him in discovery; on that video according
to Frye, an individual stated he had heard from one of Frye's
alleged coconspirators that Frye was in the Philippines.

On January 27, 2011, the trial court held a hearing on all pending
motions, including the motion for a speedy trial and the motion to
dismiss all indictments with prejudice for lack of speedy prosecution
and/or speedy trial.  Frye at that time appeared pro se because, as
noted above, the trial court had granted his motion to do so.  Frye
reasserted many of the allegations raised in his motions and stated
that "any investigator with a salt [sic] would have been able to find
[him in the Philippines] in five seconds."  In response, the State
pointed out that it had timely entered the arrest warrants for Frye on
the NCIC and that, once Frye "came into contact with legitimate US
law enforcement … by entering the embassy, he was served with the
indictments and he was arrested" and then timely extradited to
Alabama.

Following the hearing, the trial court, in a written order dated January
31, 2011, granted the motion for a speedy trial and "specially set" the
case for trial in April 2011.  That order denied, without stating any
specific reason, Frye's motion to dismiss for lack of speedy prosecution
or speedy trial.

(Doc. 5-14 at 4 - 6 [Ala. Ct. Crim. App. 7/3/2013 Memorandum Opinion, pp. 4-6]

(record citations omitted)).

Frye's five Coffee County cases (Coffee County Circuit Court Case Nos. CC-

2010-132 through 136) were consolidated for trial in April 2011.  (*See id*. at 1, 4).  At

trial, Frye continued to represent himself, though with the assistance of court-

appointed "standby" counsel, and a jury convicted him on all five counts charged in

the indictment.  (*See id*. at 4).  The circuit court sentenced Frye to 10 years

imprisonment on each count, with the sentences in CC-2010-132 and -133 to run

concurrently with each other but consecutively to the sentences imposed in CC-

2010-134, -135, and -136, and likewise with the sentences in CC- 2010-134, -135,

and -136 to run concurrently with each other but consecutively to those imposed in CC-2010-132 and -133. (*Id.* at 1). The court also imposed a $500 crime-victims-compensation assessment and required Frye to pay court costs and to reimburse the State for any attorney fees approved by the court. (*Id.* at 1-2).

Frye timely appealed and, at his request, was initially appointed appellate counsel, though he later elected to discharge counsel and return to proceeding *pro se*. (*See id.* at 4). On appeal, Frye argued, among other things, that the circuit court erred in denying his motions to dismiss the indictment due to the alleged denial of his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. (*See id.* at 4 – 6).

On July 3, 2013, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the circuit court's judgment. (Doc. 5-14). As to Frye's speedy-trial claims, the Court of Criminal Appeals, analyzing and balancing the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), held that the circuit court did not err in denying Frye's motions to dismiss on speedy-trial grounds. (*See* Doc. 5-14 at 7 – 12). Frye filed *pro se* an application for rehearing with the Court of Criminal Appeals (Doc. 5-15), which that court overruled on September 13, 2013 (Doc. 5-16). Frye then filed *pro se* a petition for writ of certiorari with the Alabama Supreme Court (Doc. 5-17), which that court denied without opinion on February 14, 2014, issuing a Certificate of Judgment that same day. (Doc. 5-18).

Frye did not seek further review on direct appeal with the United States Supreme Court, nor did he seek post-conviction relief in state court prior to filing

the present habeas petition (*see* Doc. 1 at 3 − 4), on April 25, 2014 (the date Frye declares, under penalty of perjury, that he delivered the petition to prison authorities for mailing (Doc. 1 at 13)).[3]

## II.    Claim for Relief[4]

Frye's habeas petition asserts only one claim for relief: that the state courts unreasonably applied the *Barker v. Wingo* factors in denying his motions to dismiss the Coffee County indictment on Sixth Amendment speedy-trial grounds.[5]   The Respondent concedes that Frye's petition is timely, *see* 28 U.S.C. § 2244(d), and that the claim he raises is both "properly exhausted and not procedurally defaulted."

---

[3] A *pro se* prisoner's federal habeas petition is deemed filed on the date it was delivered to prison authorities for mailing.  *See, e.g. Mattern v. Sec'y for Dep't of Corr.*, 494 F.3d 1282, 1284 n.2 (11th Cir. 2007) (per curiam); Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.

[4] The undersigned abides by the directive that "courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney."  *E.g.*, *Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989).

[5] Frye's petition also asserts that he was denied his right to a speedy trial under the Alabama state constitution.  (*See* Doc. 1 at 7).  However, errors of state law do not warrant federal habeas relief.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (per curiam) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes…A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 25 (11th Cir. Nov. 7, 2012) (per curiam) (unpublished) ("To the extent that Sneed alleged a violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension.").

(Doc. 5 at 9). However, the Respondent argues that Frye is due no habeas relief on the merits of his claim.[6]

### III.   Analysis

### A.   Standard of Habeas Review

Because Frye's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *E.g.*, *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1625 (2013). Under AEDPA, "a federal court may grant habeas relief only when a state court's decision on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from th[e United States Supreme] Court, or was 'based on an unreasonable determination of the facts.' " *Woods v. Donald*, No. 14-618, 2015 WL 1400852, at *3 (U.S. Mar. 30, 2015) (per curiam) (quoting 28 U.S.C. § 2254(d)). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement. If this standard is

---

[6] Following his Coffee County convictions, Frye, pursuant to a conditional guilty plea (preserving his right to appeal his speedy-trial claims there), was also convicted of securities fraud in Jefferson County, Alabama, with the sentence in that case to run concurrent with that of his Coffee County case. (*See* Doc. 1 at 11). The United States District Court for the Northern District of Alabama recently rejected Frye's similar speedy-trial habeas claim challenging his Jefferson County convictions. *See Frye v. Attorney Gen. of the State of Ala.*, No. 2:13-CV-2324-MHH-TMP, 2015 WL 328342 (N.D. Ala. Jan. 26, 2015).

difficult to meet—and it is—that is because it was meant to be.  [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal citations and quotations omitted).  *See also Woods*, 2015 WL 1400852, at *3 ("AEDPA's standard is intentionally ' " ' difficult to meet. ' " ' " (quoting *White v. Woodall*, 572 U.S. ——, ——, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ——, ——, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).  The United States Supreme Court recently re-emphasized the extent of AEDPA's "formidable barrier," stating:

> We have explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at ——, 134 S. Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at ——, 134 S. Ct., at 1702 (same).  To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

> Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 2015 WL 1400852, at *3.

The Eleventh Circuit has set forth the following framework for evaluating §

2254 habeas petitions under AEDPA:

> . . . [O]ur review of []Alabama courts' decisions are limited by the terms
> of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective
> Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214
> (1996). *See* 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 402-03,
> 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Under AEDPA, we accord a
> presumption of correctness to a state court's factual findings. §
> 2254(e)(1) ("[A] determination of a factual issue made by a State court
> shall be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence."). We therefore grant habeas relief to a petitioner challenging
> a state court's factual findings only in those cases where the state
> court's decision "was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding." §
> 2254(d)(2). *See Wiggins v. Smith*, 539 U.S. 510, 528-29, 123 S. Ct. 2527,
> 156 L. Ed. 2d 471 (2003).
>
> AEDPA similarly constrains our review of legal questions decided on
> the merits in state court. Under the statute, we cannot grant habeas
> relief "with respect to any claim that was adjudicated on the merits in
> State court proceedings" unless:
>
> > [T]he adjudication of the claim-
> >
> > > (1) resulted in a decision that was contrary to, or involved
> > > an unreasonable application of, clearly established
> > > Federal law, as determined by the Supreme Court of the
> > > United States; or
> > >
> > > (2) resulted in a decision that was based on an
> > > unreasonable determination of the facts in light of the
> > > evidence presented in the State court proceeding.
>
> § 2254(d). The Supreme Court has further explained the requirements
> of § 2254(d) as follows:
>
> > Under the "contrary to" clause, a federal habeas court may grant
> > the writ if the state court arrives at a conclusion opposite to that
> > reached by this Court on a question of law or if the state court
> > decides a case differently than this Court has on a set of

> materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
>
> *Williams*, 529 U.S. at 412-13, 120 S. Ct. 1495. When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review *de novo. Cone v. Bell*, --- U.S. ----, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009).

*Mason v. Allen*, 605 F.3d 1114, 1118-19 (11th Cir. 2010) (per curiam) (footnote omitted).

Under this framework, the undersigned will now address Frye's claim for habeas relief.  Because the Alabama Supreme Court denied Frye's petition for writ of certiorari without opinion, this Court looks to the reasoning of the Court of Criminal Appeals in its memorandum opinion (Doc. 5-14) in addressing Frye's claim.  *See Powell v. Allen*, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010) (per curiam) ("When the last state court rendering judgment affirms without explanation, [federal courts] presume that it rests on the reasons given in the last reasoned decision." (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991); *Sweet v. Sec., Dep't of Corrections*, 467 F.3d 1311, 1316-17 (11th Cir. 2006))).

## B.    Speedy Trial Claim

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an "accused" for any reason at all. [United States Supreme Court] cases, however, have qualified the literal sweep of the provision by specifically recognizing the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant

> asserted his right to a speedy trial, and whether he suffered prejudice
> as the delay's result.

*Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530).

*See also Vermont v. Brillon*, 556 U.S. 81, 89-90 (2009) ("The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.' *Barker*, 407 U.S., at 522, 92 S. Ct. 2182 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L. Ed. 950 (1905)). It is 'consistent with delays and depend[ent] upon circumstances.' 407 U.S., at 522, 92 S. Ct. 2182 (internal quotation marks omitted). In *Barker*, the Court refused to 'quantif[y]' the right 'into a specified number of days or months' or to hinge the right on a defendant's explicit request for a speedy trial. *Id.*, at 522–525, 92 S. Ct. 2182. Rejecting such 'inflexible approaches,' *Barker* established a 'balancing test, in which the conduct of both the prosecution and the defendant are weighed.' *Id.*, at 529, 530, 92 S. Ct. 2182. '[S]ome of the factors' that courts should weigh include '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Ibid.*"); *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009) ("To determine whether the government has violated the right to a speedy trial under the Sixth Amendment, a district court considers four factors: (1) 'length of delay'; (2) 'the reason for the delay'; (3) 'the defendant's assertion of his right'; and (4) 'prejudice to the defendant.' " (quoting *Barker*, 407 U.S. at 530)). "*Barker*'s formulation 'necessarily compels courts to approach speedy trial cases on an *ad hoc* basis[.]' " *Brillon*, 556 U.S. at 91 (quoting *Barker*, 407 U.S. at 530) (alteration added).

## 1.    Length of Delay

"[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay."  *Id.* at 655-56 (citation omitted).  In analyzing *Barker*'s "length of delay" factor in Frye's direct appeal, the Alabama Court of Criminal Appeals reasonably recognized that, under then-existing Supreme Court precedent, the "delay of approximately 64 months" – that is, approximately 5⅓ years – between Frye's indictment in Coffee County in December 2005 and his trial in April 2011[7] was "sufficient to trigger an examination of the remaining *Barker* factors."[8] (Doc. 5-14 at 8).  *See Doggett*, 505 U.S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); *Parris v. Warden,*

---

[7] " 'The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial.' " *Knight*, 562 F.3d at 1323 (quoting *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir. 1979) (citing *Dillingham v. United States*, 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975))).

[8] Contrary to what Frye appears to believe, however, a delay of approximately 5⅓ years alone does not make a speedy trial violation a foregone conclusion.  *Cf. United States v. Lamar*, 562 F. App'x 802, 805 (11th Cir. April 2, 2014) (per curiam) (unpublished) ("There were 42 months between Lamar's indictment on November 5, 2008, and his arrest on May 8, 2012. Although this delay requires the speedy-trial analysis, it is substantially less than the eight-and-one-half-year delay in *Doggett. See* [*United States v.* ]*Villarreal,* 613 F.3d [1344,] 1355[ (11th Cir. 2010) (concluding no speedy-trial violation, although nearly 10–year delay from indictment to arrest, which weighed against convicted defendant)… Because the first three *Barker* factors do not uniformly weigh heavily against the government, however, Lamar was required to demonstrate actual prejudice, which he failed to do.").

*Limestone Corr. Facility*, 542 F. App'x 850, 852 (11th Cir. Oct. 24, 2013) (per curiam) (unpublished)[9] ("A delay of one year is considered 'presumptively prejudicial,' and triggers an inquiry into the other *Barker* factors." (citing *Doggett*, 505 U.S. at 652 n.1)), *cert. denied, Parris v. Mitchem*, 134 S. Ct. 1502 (2014); *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) (per curiam) ("The Supreme Court cases and cases in this circuit have evaluated prejudice in the context of delays of less than four years.").

### 2.  Reason for the Delay

In addressing the "reason for delay" factor, "*Barker* instructs that 'different weights should be assigned to different reasons,' [407 U.S.]*,* at 531, 92 S. Ct. 2182, and in applying *Barker,* [the Supreme Court] ha[s] asked 'whether the government or the criminal defendant is more to blame for th[e] delay.' " *Brillon*, 556 U.S. at 90 (quoting *Doggett,* 505 U.S. at 651).  *See also United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) ("To determine whether Bagga's right to a speedy trial has been violated the conduct of the government must be weighed against the conduct of the defendant." (citing *Barker*, 407 U.S. at 530)).   "Deliberate delay 'to hamper the defense' weighs heavily against the prosecution.  '[M]ore neutral reason[s] such as negligence or overcrowded courts' weigh less heavily 'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' " *Brillon*, 556 U.S. at 90 (quoting

---

[9]  The undersigned recognizes that, in this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

*Barker*, 407 U.S. at 531) (internal citation omitted).  "In contrast, delay caused by the defense weighs against the defendant…"  *Id.*

The Court of Criminal Appeals addressed this factor as follows:

According to Frye, he left the United States for the Philippines in September 2005, which was before he was indicted in December 2005. Although Frye contends that "[t]he State made little or no effort to bring Frye to trial, arrest him, and/or to minimally at least officially notify him of the indictment," the record indicates that the State entered into the NCIC information regarding Frye's arrest warrants and indictments.  Further, the record supports the State's assertion below that once Frye made contact with United States law-enforcement authorities--who, in turn, initiated a search of the NCIC--Frye was promptly notified of the warrants and charges against him. The record does not clearly indicate that the State knew about Frye's whereabouts but deliberately delayed attempting to extradite him; rather, the record shows that once the State clearly learned of Frye's location in the Philippines, it immediately initiated the 2-4 month extradition process and paid for Frye's extradition to Alabama.  This supports a finding that the State acted with reasonable diligence in bringing Frye to trial.

Frye admitted at the hearing that he had an acquaintance in the United States ship additional clothing to him after he had been in the Philippines.  Although Frye attributed this to a decision to stay in the Philippines longer than he had initially expected to stay, the State asserted that Frye had hastily fled the United States because, the State said, he had heard that he was going to be indicted in Alabama. Thus, under the State's version of the facts, most of the delay would be directly attributable to Frye, which would not count against the State in the *Barker* balancing process.  The record does not, however, clearly indicate that the State's version of the facts is correct or incorrect. Thus, at best, the delay in this case appears to be justified; at worst, the delay would be attributable to "official negligence" by the State.  As noted above, however, on balance, it appears that the State exercised reasonable diligence in attempting to locate Frye and bring him to trial.  Thus, this factor does not weigh heavily against the State.

(Doc. 5-14 at 8 – 9 (citations and footnotes omitted)).[10]

---

[10] In reaching this conclusion, the court relied primarily on *Ex parte Walker*, 928 So. 2d 259 (Ala. 2005), which discussed the following "hypothetical" from *Doggett*: "[I]f the Government

"While the government is not required to exhaust all conceivable avenues for locating [a defendant] after his indictment, it has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial." *Bagga*, 782 F.2d at 1543  (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)).   A defendant's "absence from the country did not relieve the government of its obligations to make good-faith efforts to have him returned."  *Id.*

Here, Frye has made no effort to meet his substantial burden of showing that the Court of Criminal Appeals's determinations of fact were incorrect as to this point, *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."), and the court's determination that the State exercised reasonable diligence in attempting to apprehend Frye, such that the "reason for delay" *Barker* factor did not weight heavily against the State, was not unreasonable in light of then-existing clearly-established federal law.[11]   The

---

had pursued [the defendant] with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense."  505 U.S. at 656.  Based on this passage from *Doggett*, *Walker* held that "when the state acts with reasonable diligence in bringing the defendant to trial, the defendant has the burden of proving prejudice caused by the delay."  928 So. 2d at 267.

[11]   Frye complains that the State has put "no evidence…on the record that shows Frye evaded arrest[,]" and that it "never submit[ted] any evidence (sworn documents or testimony) of what they did to find Frye and bring him to trial…"  (Doc. 1-1 at 5.  *See also* Doc. 6 at 3 ("…[T]he main fact is there is no evidence submitted by the State at the evidentiary hearing.  Frye and the State gave oral arguments and presented assertions which should not be treated as facts or evidence.").  He cites to cases from federal courts of

facts of Frye's case are similar to those in *Bagga*, in which the Eleventh Circuit affirmed the district court's finding that, for speedy trial purposes, the United States government had sufficiently exercised good-faith efforts to locate a defendant abroad:

> The government strongly argues that it made a reasonable effort to locate Bagga, while Bagga is critical of the adequacy of the government's efforts to find him after the return of the indictment. To determine whether Bagga's right to a speedy trial has been violated the conduct of the government must be weighed against the conduct of the defendant…
>
> Bagga received a call one evening in April 1978 advising him that his wife had suffered a nervous breakdown in India. He left the next morning to go to her. After the indictment in July, 1978 the agents were at a loss to determine where he had gone. Because of his sudden departure it was surmised that he was a fugitive. The agents looked for Bagga without success at his residence on East Winding Drive in Atlanta, the address that he had given the agents at the time of his interview with them. Apparently, he had moved from there by the time he was called as a witness in the Weiss case, because he then testified that he lived on Copeland Road, Sandy Springs. This could account for the agents' failure to find or telephone Bagga's relatives at the Copeland Road Complex where Bagga testified they were living during late 1978 and early 1979.
>
> The agents also met with no success when they looked for Bagga at a

---

appeal that, in analyzing speedy trial claims by <u>federal</u> defendants, faulted the government for not submitting evidence of its diligence in locating the defendants, with one case stating that "arguments in brief are not evidence." (*Id.* (quoting *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (per curiam)).

A review of the transcript from the January 27, 2011 hearing on Frye's pretrial motions (Doc. 5-2 at 163 – 200; 5-3 at 1 – 50) appears to indicate that, in addressing Frye's speedy trial motions, the State presented no witnesses or other evidence to supports its claims of diligence in locating Frye. Instead, it appears, Frye, appearing *pro se*, engaged in long stretches of recounting of his version of the facts, to which the State's counsel would submit rebuttal argument at intervals.

Nevertheless, Frye has not cited, and the undersigned is unaware of, any then-existing federal law, clearly established by the United States Supreme Court, that would have forbidden the Alabama courts from relying on the representations of the State's counsel in weighing the *Barker* factors.

restaurant known as the Colorado Mining Company in which Bagga's wife, mother-in-law and nephew had a joint enterprise ownership interest. One of the agents spoke to employees at the restaurant who could give the agent no information of Bagga's whereabouts. The record does not disclose whether the agents spoke to any of Bagga's relatives.

Bagga complains that there was insufficient inquiry made of the passport office to find his passport which was renewed on October 18, 1978 as a means to locate him or put him on notice of the charges. He argues that there can only be an assumption that the agents discovered this information and did not act upon it, or that the passport office negligently failed to discover it, and thus no notice of the indictment was put into his passport file in the American Embassy or Consular Office in India. We are unwilling to indulge in Bagga's assumption imputing to the agents a negligent or willful failure to act or to assume that the passport office was negligent. This carries the obligation of a diligent good-faith effort too far.

Finally, Bagga urges that when the government received a tip that Bagga was in India, it should have sought his extradition to the United States. It is true that Bagga's absence from the country did not relieve the government of its obligations to make good-faith efforts to have him returned. *See United States v. McConahy,* 505 F.2d 770 (7th Cir. 1974). But such efforts do not require the government to pursue futile legal gestures. In the first place the extradition treaty with India expressly covers perjury, but it does not expressly cover a false declarations offense with which Bagga was charged. Thus, there was great doubt that this was an extraditable offense. Secondly, the government had no exact address for Bagga, a prerequisite to a request for extradition proceedings. While Bagga contends that the government could have learned of Bagga's exact address in India because Congressman Fowler, the Bombay Consulate, and the Immigration and Naturalization Service had correspondence with Bagga, we cannot fault the agents for not checking with them on the off-chance that they might have knowledge of Bagga's exact address in India. *See United States v. Deleon,* 710 F.2d 1218 (7th Cir.1983). The best that can be said is that if the government was at fault for not locating Bagga in India, it was clearly no more than mere negligence. "Though a purposeful attempt to delay the trial to prejudice the defendant or to gain a tactical advantage for itself should weigh heavily against the Government, *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S. Ct. at 2192, a more neutral reason, such as negligence, does not necessarily tip the scale in favor of the defendant, particularly

17

where the defendant was at liberty and outside the jurisdiction where the indictment was returned. *United States v. Walters,* 5 Cir., 1979, 591 F.2d 1195, 1201." *United States v. Carter,* 603 F.2d 1204, 1207 (5th Cir. 1979).

Finally, the evidence shows that the agents sought information from the local police authorities, pursued a lead suggesting that Bagga would be in Detroit, registered his name with the nationwide crime information network and took steps to apprehend Bagga if and when he sought to return to the United States. The district court found that a reasonable effort was made to locate Bagga, and the failure to locate him was not a part of any scheme on the part of government agencies to prejudice his defense which could be raised in this action. We think that the record supports a finding that the government made a diligent good-faith effort to locate Bagga, and, in any event, the findings below are not clearly erroneous. *United States v. Mitchell,* 769 F.2d 1544, 1547 (11th Cir.1985); *See United States v. Beery,* 678 F.2d 856, 869 (10th Cir.1982); *United States v. Parish,* 468 F.2d 1129, 1134 (D.C.Cir.1972), *cert. denied,* 410 U.S. 957, 93 S. Ct. 1430, 35 L. Ed. 2d 690 (1973).

*Bagga*, 782 F.2d at 1543-44.[12]

Given that the Eleventh Circuit, when faced with circumstances similar to Frye's, found the government had acted with reasonable diligence in locating and apprehending the defendant, it cannot be said that the Court of Criminal Appeals's decision as to the "reason for delay" *Barker* factor was contrary to, or involved an unreasonable application of, clearly established federal law.

---

[12] The Northern District of Alabama also found *Bagga* instructive. *See Frye*, 2015 WL 328342, at *3 ("Mr. Frye argues that the State of Alabama knew he was in the Philippines as early as 2006 yet negligently failed to do anything to have him arrested there. Even assuming petitioner's evidence on this is admissible, having knowledge that Frye was in the Philippines is a far cry from knowing where he is in the Philippines so that he may be arrested. *See United States v. Bagga*, 782 F.2d 1541, 1543–44 (11th Cir. 1986) (holding that a seven-year delay between indictment and trial did not violate speedy trial rights where government received a tip that defendant was in India but had no exact address, a prerequisite for extradition proceedings).").

Frye apparently believes that the facts of his case more closely mirror those of the defendant in *Doggett*, in which the Supreme Court found a violation of speedy trial rights for a defendant who was believed to have left the country after being indicted and was not apprehended for 8½ years.  However, in analyzing *Barker*'s "reason for delay" factor, the Supreme Court deferred to the factual findings of the lower court, which found government negligence weighing this factor against the government.  *See Doggett*, 505 U.S. at 652-53 ("As for *Barker*'s second criterion, the Government claims to have sought Doggett with diligence.  The findings of the courts below are to the contrary, however, and we review trial court determinations of negligence with considerable deference…The Government gives us nothing to gainsay the findings that have come up to us, and we see nothing fatal to them in the record. For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes. While the Government's lethargy may have reflected no more than Doggett's relative unimportance in the world of drug trafficking, it was still findable negligence, and the finding stands.").  The Court established no clear, unequivocal rule that courts must always reach such a determination when presented with similar facts; thus, *Doggett*'s holding as to this factor did not compel the Court of Criminal Appeals to reach a similar determination in Frye's case. *See White v. Woodall*, 134 S. Ct. 1697, 1706-07, *reh'g denied*, 134 S. Ct. 2835 (2014) ("[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a

clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question…" (quotation marks omitted)).

Regardless, the facts of *Doggett* are materially distinguishable. In *Doggett*, the defendant, who was believed to have left the country in March 1980 following his indictment in February 1980, returned to the United States in 1982, passing through customs in New York and settling in Virginia. *Id.* at 648-49. While the defendant was abroad, the government passed on an opportunity to initiate formal extradition proceedings after the defendant was arrested in Panama and missed other opportunities to investigate his whereabouts. *Id.* at 649-50. The defendant was eventually arrested in the United States in September 1988 "when the Marshal's Service ran a simple credit check on several thousand people subject to outstanding arrest warrants and, within minutes, found out where Doggett lived and worked." *Id.* at 650. The Court of Criminal Appeals's factual findings do not reflect this degree of neglect, and Frye has not rebutted these findings.[13] *See* 28 U.S.C. § 2254(e)(1).

---

[13] *Cf. Frye*, 2015 WL 328342, at *10 ("The petitioner makes reference to a more recent Supreme Court case in support of his claim, citing *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). In *Doggett*, however, the Government made 'no serious effort' to find the defendant, assuming incorrectly that he was living abroad, when, in fact, he had returned to the United States and had been living, working, voting, and attending school here, and could have been found "within minutes" had the Government made any effort to locate him. 505 U.S. at 652. Moreover, the Court stated that 'if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail.' 505 U.S. at 657. In this case, the courts found that the state exercised "reasonable diligence in attempting to locate Frye"…There is no allegation that Frye, like Doggett, ever traveled back to the United States, or had any contact with any law enforcement agencies in the United States. Doggett lived openly in Virginia for years; Frye never returned to the United States, nor did he have any contact with U.S. officials until he applied for a new passport, after which the state promptly undertook to extradite him.").

### 3.      Assertion of Right

In addressing this factor, the Court of Criminal Appeals stated:

> As noted, Frye arrived in Alabama in March 2010, and he filed his first motion for a speedy trial on December 27, 2010, and his second motion on January 24, 2011.   Further, as noted above, the evidence was disputed regarding whether Frye knew of the pendency of the indictment during the almost four years between his indictment and arrest; Frye stated that he did not know about the indictment, but he also admitted that he had an acquaintance ship clothes to him after he left the United States, which, the State asserts, indicates that Frye left the United States hastily.   Thus, as was the case with the accused in *Ex parte Walker*, "there is no conclusive proof one way or the other regarding [Frye's] knowledge of the charges during the delay between [his] indictment and her arrest."   928 So. 2d at 266.   Unlike *Ex parte Walker*, however, the evidence in this case tends to indicate that the State exercised reasonable diligence to locate Frye and bring him to trial.   Consequently, this factor, at most, weighs only slightly in Frye's favor…

(Doc. 5-14 at 10).

The undersigned finds that the Court need not decide whether the Court of Criminal Appeals reasonably applied this *Barker* factor.[14] In response to Frye's assertion "that the first three *Barker* factors weigh so heavily in his favor that he is relieved of his burden of demonstrating prejudice[,]" the court stated:   "As our analysis above discusses,…we do not agree that the first three factors weigh heavily in Frye's favor; therefore, Frye is not relieved of the requirement that he

---

[14] Nevertheless, the Court of Criminal Appeals's determination that this factor weighed "only slightly in Frye's favor" appears to be reasonable, given the approximately 9-month delay between Frye's arrival in Alabama and his first motion for speedy trial. *See Lamar*, 562 F. App'x at 806 ("The district judge…made a lesser finding that the assertion factor was neutral, which was not clearly erroneous, because Lamar asserted his right to a speedy trial approximately three months after he was arrested. *See United States v. Ingram*, 446 F.3d 1332, 1338 (11th Cir. 2006) (weighing the third factor against the government where the defendant asserted his right to a speedy trial soon after learning of the indictment and arrest warrant).").

demonstrate that the delay prejudiced him." (*Id.*).  Requiring Frye to show actual prejudice when the first three *Barker* factors did not all weigh heavily against the State was not contrary to clearly established Supreme Court precedent, as the Eleventh Circuit has reached the same conclusion.  *See Parris*, 542 F. App'x at 852 ("If the first three *Barker* factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) ('In this circuit, a defendant generally must show actual prejudice unless the first three factors ... all weigh heavily against the government.') (quotation omitted)."); *Rogers v. Hall*, 567 F. App'x 873, 879 (11th Cir. May 30, 2014) (per curiam) (unpublished) ("[A] defendant…'generally must show actual prejudice where the first three factors do not weigh heavily against the [State].' *See United States v. Villarreal,* 613 F.3d 1344, 1357 (11th Cir. 2010)."), *cert. denied*, *Rogers v. Sellers*, 135 S. Ct. 452 (2014); *Reed v. Farley*, 512 U.S. 339, 353 (1994) ("A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here.  *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2191-92, 33 L. Ed. 2d 101 (1972) (four factors figure in the determination of Sixth Amendment speedy trial claims; one of the four is 'prejudice to the defendant').").

As stated above, the undersigned has already determined that the Court of Criminal Appeals's decision to not heavily weigh the "reason for delay" *Barker* factor against the State was reasonable based on clearly established federal law. Thus, even if the "assertion of right" *Barker* factor should have weighed heavily

against the State, Frye would still have been required to demonstrate prejudice due to the delay.

### 4.        Prejudice Due to Delay

The Supreme Court has observed that "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker,* 407 U.S. at 532).    "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Id.* (quoting *Barker,* 407 U.S. at 532). "Consideration of prejudice is not limited to the specifically demonstrable, and…affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." *Id.* at 655-56 (citations and quotation omitted).

In addressing the "prejudice" factor, the Court of Criminal Appeals, after noting the above-mentioned types of "harm" set forth in *Doggett*, stated:

> Frye makes a summary assertion that his pretrial incarceration was oppressive; although he does not specifically assert how it was oppressive, in the trial court, among other things, he alleged that he was not allowed to bring his computer and documentary evidence from the Philippines with him, and he asserted that he had limited access to legal resources.
>
> Nothing indicates, however, that the State had any involvement in the

decision to disallow Frye to bring his computer and other evidence with him.  Furthermore,…the trial court made certain that Frye understood what he was doing in waiving his right to the pretrial assistance of appointed counsel (Frye accepted the appointment of standby counsel for assistance at trial), and the trial court made good-faith efforts to ensure that Frye had sufficient access to adequate legal resources.

Frye also asserts "that he had little to no recollection of the relevant events and issues of all those transactions he was alleged to have known about and Frye had no evidence as it was missing or lost."  Frye claims that

> "[i]mportant and pertinent documents and communication … were missing (namely Defendant's Exhibit 1--Summary of Understanding that all Complainants would have needed to sign to prove they had a Deferred Compensation plan) (R. 312, 450, 475, 493, 520) as Mr. Von Kanel testified to the need for signed plan documents (R. 400) as well as witnesses for Frye were not able to be found and Frye could not recall enough to present a defense so he could try to rebut evidence at trial that was supplied solely by the State (even Defendant's exhibits were from State's discovery."

At trial, however, Frye did not dispute that the agents in this case in fact had deferred-compensation plans.  Moreover, Frye does not explain specifically why the "summary of understanding" was essential to his case.  Given that the other three factors do not all weigh heavily against the State, Frye's allegations of prejudice are insufficient to demonstrate that he was entitled to a dismissal of the charges against him on the basis that his speedy-trial rights were infringed.

(Doc. 5-14 at 11 – 12 (citations omitted)).

The Court of Criminal Appeals reasonably determined that Frye's vague assertions of faded memories and lost or missing evidence caused by the delay were insufficient to show prejudice.[15]  *See United States v. Loud Hawk*, 474 U.S. 302, 315

---

[15] Frye now attempts to explain that the "summaries of understanding" were "the only contract between Century 21 (employer of the complainants/victims) and the agents (the alleged victims) to legally show their relationship and prove agents had bought a deferred compensation plan as the state had to prove" and were thus essential to his "main rebuttal, as he did not get to present a defense to the agent's testimony, was the fact they (agents)

(1986) ("The Court of Appeals gave little weight to the fourth factor, prejudice to respondents. At most, the court recognized the possibility of impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case.  That possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated. In this case, moreover, delay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." (citations and quotation omitted)); *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir. 1994) ("Hayes argues that one witness was unable to recall certain events in her trial testimony. Beyond this, he asserts only a vague allegation that he was prejudiced by the 'erosion of exculpatory evidence and testimony.' … Such conclusory allegations do not establish the required showing of prejudice to prevail under the plain error standard.  This court has consistently held that conclusory assertions of prejudice, including unsubstantiated allegations of witnesses' faded memories, are insufficient to constitute proof of actual prejudice.").

Additionally, Frye's "summary assertion" of oppressive pretrial incarceration "evidence[s] nothing extraordinary about his confinement.  The Third Circuit has stated, 'We do not believe ... that pretrial detention, coupled with a fourteen and one-half month delay, permits an automatic inference of enough prejudice to balance that factor in a petitioner's favor without proof of substandard conditions or

---

had no ownership in the John Hancock life insurance policy and therefore, it was not their money and therefore, it was not a security--but since Frye could not conclusively show this Summary of Understanding to the jury, this prejudiced his defense…"  (Doc. 1-1 at 11 – 12). Even accepting this as true, it is insufficient to overcome the deference this Court must give the judgment on the Alabama courts under AEDPA.

other oppressive factors *beyond those that necessarily attend imprisonment*.' *Hakeem v. Beyer*, 990 F.2d 750, 761 (3d Cir. 1993) (emphasis added). [Frye] does not explain how the conditions of his pretrial confinement were different from the unpleasant conditions that ordinarily attend imprisonment." *Beard v. Sec'y for Dep't of Corr.*, 161 F. App'x 824, 828 (11th Cir. Dec. 30, 2005) (per curiam) (unpublished). Moreover, Frye is at least partially to blame for the specific "oppressive" conditions he complained of in state court – inability to access his computer and documentary evidence from the Philippines with him, and limited access to legal resources – because, despite being a pretrial detainee, he chose to discharge his appointed counsel and represent himself.

In sum, Frye "has not shown that the state court's decision was contrary to or an unreasonable application of federal law; rather he simply quibbles with the state court's application of the *Barker* factors. This is insufficient to entitle him to habeas relief." *Jackson v. Benton*, 315 F. App'x 788, 793 (11th Cir. Feb. 23, 2009) (per curiam) (unpublished). Accordingly, the undersigned finds that Frye is due no relief on his habeas petition and will **RECOMMEND** that it be **DENIED**.

### IV.    Certificate of Appealability

In actions such as this one, brought under § 2254, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts. "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v.*

*United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).   However, "a COA does not require a showing that the appeal will succeed."  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed  further." (citations  omitted  and  punctuation  modified)).).   "A  prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 338 (quotations omitted).

Upon consideration, the undersigned will **RECOMMEND** that a certificate of appealability in this action be **DENIED**.  Frye has not made a substantial showing of the denial of a constitutional right, and he has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment…debatable or wrong."  *Slack*, 529 U.S. at 484.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If

there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[16]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).[17]

## V.   Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000).

---

[16] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011.  (*See* Doc. 14 in CA-11-0165-WS-C.).

[17] Should the Court adopt this recommendation and deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts.

*See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Based on the foregoing analysis, the undersigned will **RECOMMEND** the Court certify that any appeal by Frye in this action would be without merit and

therefore not taken in good faith and, accordingly, find that Frye is not entitled to appeal *in forma pauperis*.

## VI.    Conclusion

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Frye's habeas petition (Doc. 1) be **DENIED**, that this action be **DISMISSED with prejudice**, that judgment be entered in favor of the Respondent, and that the Court find that Frye is not entitled to a certificate of appealability or to appeal *in forma pauperis*.[18]

## VII.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; SD ALA LR 72.4.   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the

---

[18] As such, it is further **RECOMMENDED** that Frye's Motion for Report and Recommendation docketed October 7, 2014 (Doc. 7), praying that the Court "require the magistrate judge to make a report and recommendation regarding this cause without further delay and…find Frye's right to a speedy trial was violated and grant his relief without further delay" be **DENIED as moot**.

consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 4th day of May 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**